IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA

WAYCROSS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 CASE |
| | ) | No. 17-50682 |
| MARCUS CARTER, and | ) | |
| CHRISTINE CARTER, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| MARCUS CARTER, and | ) | ADVERSARY |
| CHRISTINE CARTER, | ) | PROCEEDING |
| | ) | No. 17-05009 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GUTHRIES MOTORS, INC., d/b/a | ) | |
| GUTHRIE MOTORS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM AND ORDER</u>

Marcus Carter ("<u>Mr. Carter</u>") and Christine Carter ("<u>Mrs. Carter</u>"; and together

with Mr. Carter, the "<u>Plaintiffs</u>") filed their chapter 13 petition on October 12, 2017.  (ECF

No. 1.)[1]  On their bankruptcy schedules, Plaintiffs listed a 2004 Ford F-150 (the "<u>Vehicle</u>")

as an asset of the estate (ECF No. 1 at 12) and Guthries Motors, Inc., d/b/a Guthrie

---

[1] Unless otherwise indicated with "A.P.", docket citations refer to the docket in the Plaintiffs' underlying bankruptcy case, No. 17-50682.

Motors, Inc. (the "Defendant") as a creditor having a secured claim on the Vehicle.  The Bankruptcy Noticing Center ("BNC") served notice of Plaintiffs' bankruptcy filing on October 13, 2017.  Defendant was included in this distribution, with notice being sent via electronic transmission to guthriemotors@yahoo.com.  (ECF No. 9.)

Plaintiffs filed this adversary proceeding (the "Complaint") (A.P. ECF No. 1)  on November 29, 2017, seeking an award of actual damages, attorney's fees, and punitive damages, totaling $50,000, against Defendant for an alleged violation of the automatic stay.  On December 6, 2017, Plaintiffs' counsel served a copy of the Complaint and summons by sending copies via first class mail to Defendant and to Defendant's registered agent, Samuel T. Guthrie.  (A.P. ECF No. 4.)  The Bankruptcy Court Clerk's Office ("Clerk's Office") re-issued the summons on December 14, 2017 (A.P. ECF No. 5), and again on March 5, 2018 (A.P. ECF No. 11), each time at Plaintiffs' counsel's request. After each re-issued summons, Plaintiffs' counsel served Defendant and Defendant's agent with notice of the Complaint again and a copy of the applicable summons via first class mail.  (A.P. ECF Nos. 6, 12.)

While three copies of the Complaint were served,[2]  Defendant failed to answer or respond.  As a result, Plaintiffs filed a Motion for Entry of Default (A.P. ECF No. 14), which the Clerk's Office entered in favor of Plaintiffs on May 1, 2018.  (A.P. ECF No. 15.)

---

[2] In each instance, notice of the Complaint and each summons was sent to Defendant at 180 Hwy. 82 W., Pearson, GA 31642 and to Defendant's registered agent at 311 Albany Road, Pearson, GA 31642.

Plaintiffs then filed their Motion for Default Judgment on May 11, 2018, and revised their damages demand to $100,000 in actual damages, $10,350 in attorney's fees, and $100,000 in punitive damages.  (A.P. ECF No. 17.)  Default judgment was entered in favor of Plaintiffs on May 30, 2018.  (A.P. ECF No. 18.)[3]

Pursuant to notice, the Court conducted two evidentiary hearings on Plaintiffs' request for damages, on June 28, 2018 (the "First Hearing"), and July 26, 2018 (the "Second Hearing"; and together with the First Hearing, the "Hearings"), respectively. Defendant received timely notice of the Hearings,[4] but did not appear at either Hearing. At the Second Hearing, the Court took this matter under advisement.

Having considered the evidence and applicable authority, the Court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

On or about October 23, 2017, Defendant called Mrs. Carter's mother, Margaret Teresa Kroft ("Ms. Kroft"), regarding Mrs. Carter's missed payments on the Vehicle. (Kroft Aff. ¶ 2, A.P. ECF No. 25.)  Mrs. Carter's phone number was no longer in service, and Mrs. Carter had given Defendant Ms. Kroft's information as a point of contact.  (Id.) On that call, Ms. Kroft informed Defendant that Mrs. Carter had filed for bankruptcy.

---

[3] Notice of the default judgment was sent to Defendant and Defendant's agent via first class mail by BNC. (A.P. ECF No. 21.)

[4] Notices of the Hearings were sent to Defendant and Defendant's agent via first class mail by BNC.  (A.P. ECF Nos. 20, 24.)

(Id.)

A few days later, Mrs. Carter took her kids to do some shopping at the Dollar General in Douglas, Georgia.  While Mrs. Carter and the children were inside the store, Defendant repossessed the Vehicle.  When Mrs. Carter and her children finished shopping to find the Vehicle gone, Mrs. Carter thought that it had been stolen from the parking lot.  After discovering that the Vehicle had not been stolen, rather it had been repossessed, Mrs. Carter called Defendant to ask that the Vehicle be returned in light of her bankruptcy filing.  On this call, Defendant informed Mrs. Carter that it had no knowledge of the bankruptcy case and refused to return the Vehicle without seeing proof of the bankruptcy filing.

Mrs. Carter then called her bankruptcy attorney, Franklin Hayes ("Mr. Hayes"), whose office promptly attempted to call Defendant and fax evidence of the Plaintiffs' bankruptcy filing to Defendant.  Notwithstanding being informed of Plaintiffs' bankruptcy filing by Mrs. Kroft, Mrs. Carter, and Mr. Hayes's office, Defendant closed operations for the day without returning the Vehicle to Mrs. Carter.  Thereafter, Mr. Hayes rescued Mrs. Carter and her children from the Dollar General parking lot and drove them home.[5]

The next day, Mrs. Carter paid an acquaintance $30 to take her to Defendant's

---

[5] Mr. Hayes was the only person Mrs. Carter could contact in Douglas because her family had recently relocated to the Douglas area and Mr. Carter, a logger, was unreachable at the time due to the nature of his work.

Pearson, Georgia, car lot to retrieve the Vehicle. While waiting for the Vehicle, Defendant required proof of Mrs. Carter's auto insurance. Mrs. Carter was able to pull up proof of insurance with GEICO on her cell phone and e-mailed it to Defendant. However, Defendant then informed Mrs. Carter that it could not review the proof of insurance e-mail and further had not received any notice of her bankruptcy filing because the password to Defendant's e-mail account had been lost and Defendant's fax machine was inoperable. After spending hours at Defendant's car lot trying to give Defendant all of the requested documentation, Mrs. Carter learned that her Vehicle was located at a nearby junkyard and went to retrieve it herself. In total, Mrs. Carter estimated that she spent five hours at Defendant's car lot attempting to recover possession of the Vehicle.

On the day she spent at Defendant's car lot, Mrs. Carter had been scheduled to take her 10-year-old daughter to see a neurology specialist in Macon, Georgia. This appointment had been scheduled for more than two months, and Mrs. Carter was forced to cancel it because she was left without transportation to Macon on that day. Mrs. Carter's daughter is prescribed certain medication by the neurology specialist in Macon. Because Mrs. Carter was unable to take her daughter to the neurology appointment the day after the repossession, Mrs. Carter's daughter ran out of the prescribed medication, and Mrs. Carter had to take her daughter to the emergency room for treatment.

Additionally, Mrs. Carter was forced to cancel a babysitting job from which she would have earned $80.  As of the date of the Second Hearing, Mrs. Carter was still unable to obtain a rescheduled neurology appointment for her daughter.

## CONCLUSIONS OF LAW

I.    **Willful Violation of the Automatic Stay**

The filing of a petition under title 11 of the United States Code (the "Bankruptcy Code") triggers an automatic stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate…" 11 U.S.C. § 362(a)(3).  The automatic stay remains in effect until the case is closed, dismissed, or until the time a discharge is granted or denied.  11 U.S.C. § 362(c).  Because the automatic stay is considered a fundamental debtor protection, "Congress has provided for the mandatory imposition of actual damages and the discretionary imposition of punitive sanctions where the automatic stay is willfully violated."  In re White, 410 B.R. 322, 326 (Bankr. M.D. Fla. 2009); see also 11 U.S.C. § 362(k)(1).

"A willful violation of a stay occurs when the creditor (1) knew the automatic stay was invoked and (2) intended the actions which violated the stay."  White, 410 B.R. at 326 (quoting Durie v. Dueease (In re Dueease), No. 06-02959, 2008 WL 4936398, at *3 (Bankr. M.D. Fla. Apr. 2, 2008)).  The burden of proof rests on the plaintiff to show a willful violation of the stay by a preponderance of the evidence.  Davis v. Matt Gay Chevrolet,

Inc. (In re Davis), 374 B.R. 366, 369 (Bankr. S.D. Ga. 2007).  Once a creditor learns of a debtor's bankruptcy filing, it has "an affirmative duty to terminate or undo any action which violates the automatic stay." Kirk v. Shawmut Bank (In re Kirk), 199 B.R. 70, 72 (Bankr. N.D. Ga. 1996); see also Rutherford v. Auto Cash, Inc. (In re Rutherford), 329 B.R. 886, 898 (Bankr. N.D. Ga. 2005).  Any entity in possession of property of the estate must deliver such property to the debtor or debtor-in-possession. See 11 U.S.C. § 542; Roche v. Pep Boys, Inc. (In re Roche), 361 B.R. 615, 621 (Bankr. N.D. Ga. 2005) (concluding the onus to comply with the automatic stay is on creditors; debtors need not take affirmative legal steps to recover their property).  Further, a creditor may not condition return of estate property protected by the automatic stay on any action of a debtor. Powell v. Shorty's Used Cars (In re Powell), 555 B.R. 907, 915-16 (Bankr. S.D. Ga. 2016) (deciding creditors may not condition the return of a vehicle repossessed in violation of the automatic stay on provision of proof of insurance).

In this case, Plaintiffs have established by a preponderance of the evidence that Defendant's violation of the automatic stay was willful.[6]  Defendant had actual knowledge of the Plaintiffs' bankruptcy filing and deliberately violated the stay by repossessing the Vehicle.  In addition to the electronic notice sent to Defendant by BNC,

---

[6] The Court notes that Defendant had opportunities to counter the evidence Plaintiffs presented; however, Defendant failed to answer or otherwise respond to the Complaint and elected not to appear at either of the two Hearings on damages, despite proper service on multiple occasions of the Complaint and notice of the Hearings.

Defendant had been verbally informed of Plaintiffs' bankruptcy filing by Mrs. Kroft prior to the repossession.  Further, the Court finds Mrs. Carter's testimony credible as to the events of the day Mrs. Carter attempted to retrieve the Vehicle—when Defendant, having actual knowledge of Plaintiffs' bankruptcy filing and the automatic stay, failed to return the Vehicle as required by Section 542, and instead, required proof of insurance and left Mrs. Carter to retrieve the Vehicle from a different location herself.

II.   <u>Damages</u>

    a.   **Actual Damages**

Under Section 362(k)(1), an individual injured by a willful violation of the stay shall recover actual damages caused by the stay violation.  Actual damages are "real, substantial and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury, as opposed to nominal damages and punitive damages." <u>McMillian v. FDIC</u>, 81 F.3d 1041, 1055 (11th Cir. 1996) (quoting <u>Black's Law Dictionary</u> (6th ed. 1991)); <u>see also</u> *Actual Damages*, <u>Black's Law Dictionary</u> (10th ed. 2014).  In other words, a successful plaintiff is entitled to recover all out-of-pocket expenses, including attorney's fees, directly arising from the stay violation and supported by evidence.  Additionally, under certain circumstances, emotional distress damages are recoverable as actual damages under Section 362(k).  <u>Lodge v. Kondaur Capital Corp.</u>, 750 F.3d 1263, 1271 (11th Cir. 2014).

In this case, Plaintiffs have proven their entitlement to actual damages in the form of out-of-pocket expenses, lost wages, and attorney's fees and expenses.

1.    Out-of-Pocket Expenses and Lost Wages

As a result of Defendant's willful violation of the stay, Mrs. Carter incurred a total of $110.00 in out-of-pocket expenses and lost wages.  Based on Mrs. Carter's testimony, which the Court found credible, Defendant's violation of the automatic stay resulted in Mrs. Carter spending $30.00 to get to Defendant's car lot to retrieve the Vehicle and having to forgo the $80.00 she was to be paid for a babysitting job.   Therefore, Plaintiffs are entitled to a total of $110.00 for out-of-pocket expenses and lost wages.

2.    Actual Damages for Attorney's Fees and Costs

An injured party is also entitled to attorney's fees and costs spent to prosecute the stay violation.  11 U.S.C. § 362(k)(1).  To calculate an appropriate award of attorney's fees, a court must "determine the lodestar rate by multiplying the hours reasonably expended on a case by the prevailing hourly market rate for similar services."  In re Pischke, No. 99-43206, 2003 WL 26114156, at *2 (Bankr. S.D. Ga. May 22, 2003) (citing Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988)).  If a plaintiff fails to provide evidence of prevailing rates, a court may determine the appropriate award based on its own experience.  Norman, 836 F.2d at 1303; see also Headrick v. Ga. Dep't of Revenue (In re Headrick), 285 B.R. 540, 547 (Bankr. S.D. Ga. 2001) (concluding that hourly rates

awarded in previous cases within the Southern District of Georgia may serve as guidance when determining the market rate).

The below chart gives a brief summary of the fee schedule compiled by Plaintiffs' counsel, Mr. Hayes, with respect to his work in this case up to the date he filed the Motion for Default Judgment.[7] (A.P. ECF No. 17-1 at 1-2.) As of May 11, 2018, Mr. Hayes reportedly spent 23.00 hours on this case at a rate of $450 per hour, resulting in Plaintiffs incurring attorney's fees in the amount of $10,350.00. (A.P. ECF No. 17-1.)

Summary of Initial Fee Statement

| | | |
|---|---|---|
| Communication with Plaintiffs | 2.00 hours | $   900 |
| Communication with Defendant | 1.50 hours | $   675 |
| Adversary Suit Preparation | 12.00 hours | $ 5,400 |
| Summons, Notice, 26(f) Report | 1.50 hours | $   675 |
| Motion for Entry of Default | 2.00 hours | $   900 |
| Review of Entry of Default | .50 hour | $   225 |
| Motion for Default Judgment | 2.50 hours | $ 1,125 |
| Motion for Default Judgment Hearing | 1.00 hour | $   450 |

At the Second Hearing on damages, Mr. Hayes stated that he had performed an additional seven hours of work at the same rate, bringing the total fees requested to $13,500.00. The Court finds the work performed by Mr. Hayes and the time summarized in the Initial Fee Statement and as described by Mr. Hayes at the Second Hearing to be reasonable and necessary in this case. Though Mr. Hayes is entitled to be compensated

---

[7] Plaintiffs' counsel filed a Statement of Attorney Time and Expenses as Exhibit A (the "Initial Fee Statement") (A.P. ECF No. 17-1) to the Motion for Default Judgment. The Initial Fee Statement includes a detailed description of the work performed and time Mr. Hayes spent on this case up to May 11, 2018.

for his efforts in this case, he failed to provide evidence to justify $450 as the prevailing market rate for the services provided.  At the Second Hearing, Mr. Hayes explained that he set his hourly rate at $450.00 in this case because he had doubts as to whether Defendant would actually pay for his fees, if awarded to him.  However, Mr. Hayes's concerns do not provide sufficient support to demonstrate that the prevailing market rate is $450.00 per hour for similar services provided in the area.  Based on the Court's own experience, the appropriate, reasonable hourly rate to be applied in this case is $250.00.  Accordingly, the awarded attorney's fees will be $7,500, the sum of 30 hours at an hourly rate of $250.00.

### 3.    Actual Damages for Emotional Distress

To be entitled to damages for emotional distress arising out of a willful violation of the automatic stay, "a plaintiff must (1) suffer significant emotional distress, (2) clearly establish the significant emotional distress, and (3) demonstrate a causal connection between that significant emotional distress and the violation of the automatic stay." Lodge, 750 F.3d at 1271.  As the Lodge test provides, the requisite emotional distress must be severe, not "fleeting or trivial." Id. (quoting Dawson v. Wash. Mut. Bank, F.A. (In re Dawson), 390 F.3d 1139, 1149 (9th Cir. 2004)).  No award for emotional distress will be granted where a plaintiff offers only general evidence and fails to provide particular details. Id. at 1272 (finding plaintiffs' affidavits indicating that certain plaintiffs suffered

11

stress, had difficulties interacting with others, and had trouble performing at work insufficient to show that plaintiffs suffered significant emotional distress to justify actual damages).

While Mrs. Carter's testimony demonstrated that she did suffer distress, the evidence presented was not sufficient or specific enough to prove the significant emotional distress necessary to award damages under the <u>Lodge</u> standard. Mrs. Carter was visibly distraught at both Hearings and while she testified at the First Hearing. Mrs. Carter testified that she experienced stress and upset on the day of the repossession and was upset, frustrated, and stressed when she attempted to retrieve the Vehicle the next day. It is also reasonable to conclude from her testimony that she experienced stress and upset as a result of missing her daughter's neurology appointment. The Court is sympathetic toward Mrs. Carter; however, without any other corroborating evidence,[8] the evidence presented in this case is insufficient to justify a finding of significant emotional distress under the stringent <u>Lodge</u> test.[9]

---

[8] While the Court found Mrs. Carter's testimony credible as to the fact that she was upset and stressed by Defendant's actions, the evidence presented was too general and lacked specifics regarding the severity of her distress. Where significant distress is not readily apparent, the <u>Lodge</u> court suggests that plaintiffs should corroborate a showing of emotional distress with testimony of family or witnesses or medical evidence. <u>Lodge</u>, 750 F.3d at 1272.

[9] The Court notes that Mrs. Carter did provide testimony that she had a particular medical condition during the time of the events at issue; however, when the Court pressed for clarification as to the timing of particular circumstances relating to the medical condition and whether Plaintiffs were alleging that such circumstance was caused by Defendant's actions, no specific evidence was presented regarding the timing or a causal connection that would allow for an award of damages under <u>Lodge</u>.

b.    **Punitive Damages**

Finally, discretionary punitive damages may also be awarded under Section 362(k)(1) "when the violator acts in an egregious intentional manner." In re White, 410 B.R. 322, 327 (Bankr. M.D. Fla. 2009) (citation omitted).  Such damages are awarded only where a defendant acts with "malicious intent to harm and . . . in arrogant defiance of federal law." Bishop v. U.S. Bank/Firstar Bank, N.A. (In re Bishop), 296 B.R. 890, 898 (Bankr. S.D. Ga. 2003).  When weighing whether a defendant's actions warrant an award of punitive damages, courts consider several factors, including "(1) the nature of the defendant's conduct; (2) the nature and extent of the harm to the plaintiff; (3) the defendant's ability to pay; (4) the motives of the defendant; and (5) any provocation by the debtor." In re Roche, 361 B.R. 615, 624 (Bankr. N.D. Ga. 2005).  If a court awards punitive damages, the amount should be sufficient to deter a defendant and future, similarly situated parties from wrongful conduct. In re Davis, 374 B.R. 366, 373 (Bankr. S.D. Ga. 2007).

The Court is convinced that Defendant's actions warrant an award of punitive damages in favor of Plaintiffs.  Defendant's conduct was deliberate, wrongful, and inexcusable.  Its actions amount to "egregious misconduct . . . taken in arrogant defiance of federal law." In re Pawlowicz, 337 B.R. 640, 647 (Bankr. N.D. Ohio 2005).  The main indicators that punitive damages are appropriate here are the nature of Defendant's

13

conduct and its motives.  It is clear that Plaintiffs did not provoke Defendant into violating the automatic stay; in fact, Plaintiffs provided for payment of their debt on the Vehicle to Defendant in their proposed chapter 13 plan.  (ECF No. 2.)  Rather, Defendant acted in total disregard for the law and repossessed the Vehicle, depriving Mrs. Carter of her only form of transportation.  Defendant understood its obligations under federal law, and not only failed to comply with those obligations, but intentionally flouted them at every turn.

The facts supporting an award of punitive damages are numerous.  First, it is indisputable that Defendant knew about Plaintiffs' bankruptcy filing at the time of the repossession.  It was sent notice of the bankruptcy via electronic delivery.  Before the repossession, Ms. Kroft informed Defendant of Mrs. Carter's bankruptcy filing; immediately after it, Mrs. Carter again tried to assert her rights under the Bankruptcy Code by phone to no avail.  Second, when Mrs. Carter personally went to Defendant's office to recover the Vehicle, she was blocked for hours by Defendant's obstinate claims of office equipment malfunctions.  Defendant has been in business selling cars for years.  The Court finds it difficult to understand how a business such as Defendant could operate successfully without a functioning fax machine or e-mail address.  Third, Mrs. Carter's efforts concluded with her own retrieval of the Vehicle—Defendant failed to deliver it to her as required under the Bankruptcy Code.  Fourth, and on top of all of

Defendant's ill-advised decisions in its interactions with Plaintiffs, Defendant chose not to respond to the Complaint or to any of the several summons properly and repeatedly issued to it.  For all of these reasons, and for the purpose of deterring future misconduct, Defendant will be ordered to pay Plaintiffs $990[10] in punitive damages.

### ORDER

Pursuant to the foregoing, **IT IS HEREBY ORDERED** that Defendant, Guthries Motors, Inc., d/b/a Guthrie Motors, Inc., must pay to Plaintiffs, Marcus and Christine Carter, actual and punitive damages in the total amount of $8,600.00, which amount includes actual damages for out-of-pocket expenses and lost wages in the amount of $110.00 and attorney's fees in the amount of $7,500.00, and punitive damages in the amount of $990.00.

Michele J. Kim
United States Bankruptcy Court
Southern District of Georgia

Dated at Brunswick, Georgia,
this 28th day of September, 2018.

---

[10] The Court came to this amount by multiplying Plaintiffs' actual damages, exclusive of attorney's fees, by nine.  The Court is awarding this amount of punitive damages because it is necessary to have the most deterrent effect on Defendant.  See Exxon Shipping Co. v. Baker, 554 U.S. 471, 514 (2008) (concluding that, generally, punitive damages awards are limited to a single-digit ratio between the punitive and actual damages award).